**The LINCOLN ELECTRIC COMPANY,
Petitioner-Appellant,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 20733.**

United States Court of Appeals,
Sixth Circuit.

June 23, 1971.

Henry C. Harvey, Cleveland, Ohio, for appellant; Wallace M. Wright, Jones, Day, Cockley & Reavis, Cleveland, Ohio, on brief.

Charles E. Anderson, Tax Div., Dept. of Justice, Washington, D. C., for appellee; Johnnie M. Walters, Asst. Atty. Gen., Joseph M. Howard, Harry Baum, Attys., Tax Div., Dept. of Justice, Washington, D. C., on brief.

Before WEICK, PECK and KENT, Circuit Judges.

KENT, Circuit Judge.

Petitioner-appellant, The Lincoln Electric Company, hereinafter Lincoln, appeals from the United States Tax Court's decision, '54 T.C. 926, finding deficiencies in petitioner's Federal Income Tax for taxable years 1964 and 1965. The deficiencies, as found by the Tax Court, resulted from the fact that

Lincoln did not include its annual "bonus" paid to each of its employeees as a "cost" of the production of the year-end inventory which the Tax Court found therefore did not reflect the full value of that inventory.

■ Petitioner pointed out in its brief:

"Representatives of the Commissioner have examined Lincoln's federal income tax returns in years prior to 1964 and in such years have never adjusted the inventory cost to reflect any portion of the bonus payments. In his examination of Lincoln's returns for 1961–1963, a representative of the Commissioner specifically considered whether any bonus payments should be included in inventory cost but, after such consideration, finally made no adjustment in this respect."

It has long been recognized that the Commissioner is not bound by prior accounting methods merely because the tax returns have been examined and no deficiency has been asserted. Carver v. C.I.R., 173 F.2d 29 (6th Cir. 1949); Fruehauf Corporation v. C.I.R., 356 F.2d 975 (6th Cir. 1966).

The evidence shows that for 30 years Lincoln has paid an annual "bonus" to each of its employees, except the company president, in December of each year. The amount of the "bonus" has been determined by the Board of Directors. There has never been an express agreement between Lincoln and its employees in regard to the payment of the "bonus." There has never been any fixed formula for determining the total amount of money to be paid as "bonus" to Lincoln employees as a group or individually. However, in Lincoln's publication *The Employee Handbook,* available to each employee, under the heading, "Incentive Compensation and Merit Rating," Lincoln describes the "bonus" as follows:

"Each year since 1934 workers at Lincoln have received a substantial cash payment in December. This is not a gift. It represents a sharing of the results of efficiencies created in production during the past twelve months. The total bonus amount is determined by the Board of Directors, based on the success of the company for that year. The bonus is not guaranteed but is entirely dependent on the successful, profitable operation of the company, which to a very large extent depends on your enthusiasm and 'will-to-work.' Your share in the bonus depends on two major factors—your wages in the twelve months prior to and including October 31st and your merit ratings made as of April 30th and October 31st."

Attached to this opinion, as an appendix, is a schedule showing Lincoln's average number of employees, net sales, gross profit before bonus and taxes, regular payroll, cash bonus, and total compensation for the years 1934 to 1965, inclusive.

In this case the Commissioner has taken the position that the money paid to employees in the form of "year-end bonus" is either an expenditure for direct labor or an indirect expense incident to and necessary for the production of the goods involved, and that necessarily a portion of the "bonus" paid must be included in determining the value of the year-end inventory. Lincoln, on the contrary, asserts that the "bonus" paid has nothing to do with the cost of production of the goods involved, but is simply a sharing of the wealth, i. e., profits resulting from the efficient operation of the business. It will be noted that in the tax years in question the "bonus" equaled 118% of the 1964 regular payroll, and 121% of the 1965 regular payroll. It is undisputed that the average hourly earnings of Lincoln's production and production related workers were consistently higher than the average hourly earnings of other workers in Lincoln's industrial classification group in the Cleveland metropolitan area as reported by the *Ohio Bureau of Employment Services.* It is clear and undisputed that no portion of the "bonus" was included in the valuation of

Lincoln's ending inventory, although it is equally clear and undisputed that most of the "bonus" paid in the tax years in question was considered by Lincoln as a part of the "cost of goods sold" and deducted as such on Lincoln's tax return.

Upon examination the Commissioner of Internal Revenue determined that Lincoln's income was not clearly reflected in its tax returns in the years 1964 and 1965 because of failure to include some part of the "bonus" paid during the years in question in valuing the year-end inventory, either as a direct or indirect cost of labor. Accordingly, the Commissioner made adjustments under Int.Rev.Code of 1954, § 446(b) [1] which resulted in a tax deficiency of $381,811, plus interest for 1964, and $75,702.24, plus interest for 1965. The taxpayer challenges the propriety of the allocation of any part of the annual "bonus" to year-end inventory, but does not challenge the amount of such allocation, if proper.

The taxpayer claims in part that because its annual audit for the years in question was certified by its Certified Public Accountants as having been prepared in accordance with the "generally accepted accounting principles," therefore it was justified in its failure to include any part of the annual "bonus" in the valuation of the year-end inventory for tax purposes.

 Internal Revenue Code of 1954, § 446(a) [2] provides the general rule for computing taxable income and authorizes the computation on the basis of the regularly used accounting practices. However, Section 446(b) [1] authorizes the Internal Revenue Service to require a different method if the regular method "does not clearly reflect income." It is clear that "the Commissioner has broad powers in determining whether accounting methods used by a taxpayer clearly reflect income." Commissioner of Internal Revenue v. Hansen, 360 U.S. 446, at page 467, 79 S.Ct. 1270 at page 1282, 3 L.Ed.2d 1360 (1959). These broad powers are limited as stated by this Court in Glenn v. Kentucky Color and Chemical Co., 186 F.2d 975 (6th Cir. 1951) at page 977:

"But the Commissioner's authority to order a change in accounting methods when the taxpayer has regularly employed a consistent method depends upon his finding that the taxpayer's method does not clearly reflect income." [and see authorities therein cited.]

This Court has examined certain text material related to accounting practices and has concluded that while there may be variations in the treatment of "bonus" payments, application of the principles enumerated would necessarily result in inclusion of a portion of the "bonus" paid to production workers and production related workers for the purpose of computing the value of the year-end inventory for tax purposes.

As stated in Matz, Curry & Frank, *Cost Accounting*, (Third Edition, 1962), South-Western Publishing Company, Cincinnati, Ohio, at page 231:

"Bonus payments may be a fixed amount per employee, a fraction of one month's wages, or some other calculated amount. The amount of bonus for each employee may be a fixed and long-established tradition of a company, or the amount may vary from year to year. Bonus payments are production labor costs, selling expenses, or administrative expenses as the case may be; but when

1. Sec. 446(b): "(b) EXCEPTIONS—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income."

2. Sec. 446(a): "GENERAL RULE.— Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books."

and how should they be charged to operations? If a factory worker earns $300 a month and the company pays him one month's salary at years' end, his earnings actually amount to $325 per month with $300 paid during the month and the additional $25 per month paid in a lump sum at the end of the year. In order to spread the bonus cost over production, the following entry each month would be in order:

Work in Process ......325
 Payroll ................300
 Liability for Bonus......25
 (or Provision for Bonus)

"The bonus could also be treated as factory overhead and be included in the predetermined overhead rate, in which case the monthly entry would be:

Work in Process .......300
Factory Overhead ......25
 Payroll ................300
 Liability for bonus ......25."

It should be noted that either of the above two treatments would result in including of the bonus in the valuation of year-end inventory.

In the report of a survey made of a large number of businesses (including Lincoln) by the National Association of Accountants to ascertain the normal method of accounting for labor and labor related costs, the following is found in the report, entitled, *Accounting for Labor Costs and Labor Related Costs*, (N.A.A. Research Series Number 32, November 1, 1957, New York), at page 31 of the report:

"Some companies omit from manufacturing costs for inventory costing such labor-related costs as pensions, past service pension accruals, separation pay, special year-end compensation, group life insurance, and compensation to consultants for professional labor relations services. Their explanation for such omissions was that they consider these costs to be administrative costs rather than manufacturing costs. *Generally they recognize that the total cost of these items chargeable against manufacturing personnel is substantial and that by not charging manufacturing costs they are not showing full cost of manufacturing.* While certain items of manufacturing cost are often omitted from inventory cost, it seems desirable to have all costs applicable to manufacturing labor charged to product costs for purposes of pricing and for determining product profit or loss." [Emphasis added]

In the publication entitled, Robert I. Dickie, *Accountant's Cost Handbook*, (Second Edition, 1960, Ronald Beach Company, New York), under the heading, "Labor Costs," is found the following:

"Labor costs should not be restricted to the *base pay* earned by employees but in addition should include all *premiums* and *bonuses* and all labor related costs connected with maintaining the labor force."

Perhaps the best summary of the treatment is found in the work entitled, Charles F. Schlatter, *Cost Accounting*, (1948, John Wiley and Sons, New York), where it is stated, at page 331:

"*Bonus Payments* * * * Bonus payments to employees take a number of different forms. * * *

"If the bonuses to factory employees are costs of labor, they are generally given the same treatment that premiums for overtime receive, because they are given for much the same reason. Such bonuses are not shares of profits but premiums for extra quality rather than extra time. If the cost accounting system is process accounting, no distinction need be made between regular wages and bonus wages and overtime premiums in such systems. * *

"If the bonus paid to employees is a share of profits or a gift such as is sometimes given at Christmas, the disposition of accounts seems clear. If cost-plus contracts are involved, there is sometimes a tendency to charge them as costs of production, or as special contract costs. Ordinarily, profit and gift bonuses should

be treated realistically by charging them against profits. Action by the board of directors of the corporation may be necessary to declare a bonus to employees just as action is necessary to declare a dividend to stockholders."

Unfortunately, Professor Schlatter does not indicate whether or not a portion of the bonus should be reflected in valuation of inventory, and it appears that the accounting profession has not agreed upon any firm "principle" for the determination of this issue.

The Internal Revenue Code (1954) § 471, states the general rule in regard to the use of inventory for tax purposes as follows:

"Whenever in the opinion of the Secretary or his delegate the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary or his delegate may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income."

And the Treas.Reg. (1958), in regard to inventory provides:

"Section 1.471–1. 'Need for Inventories.' In order to reflect taxable income correctly, inventories at the beginning and end of each taxable year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor. * * *"

Treas.Reg. (1958) § 1.471–2 continues:

" 'Valuation of Inventories.' (a) Section 471 provides two tests to which each inventory must conform:

(1) It must conform as nearly as may be to the best accounting practice in the trade or business, and

(2) It must clearly reflect the income.

(b) It follows, therefore, that inventory rules cannot be uniform but must give effect to trade customs which come within the scope of the best ac-counting practice in the particular trade or business. * * *

(c) The bases of valuation most commonly used by business concerns and which meet the requirements of Section 471 are (1) cost and (2) cost or market, whichever is lower. * * "

Treas.Reg. (1958) § 1.471–3 provides:

"(c) In the case of merchandise produced by the taxpayer since the beginning of the taxable year, [cost means], (1) the cost of raw materials and supplies entering into or consumed in connection with the product, (2) expenditures for direct labor, (3) indirect expenses incident to and necessary for the production of the particular article, including in such indirect expenses a reasonable proportion of management expenses, but not including any cost of selling or return on capital, whether by way of interest or profit."

■ This Court is satisfied from an examination of the Lincoln *Employees' Handbook* that the bonus described under the heading "Wage System" must necessarily be considered by both the employee and Lincoln as compensation for labor performed. Of necessity Lincoln must consider the bonus as compensation for services before it could, as it did, deduct the amount of the bonus for tax purposes under the provisions of Treas.Reg. § 1.162–9, (1958).:

"Bonuses to employees will constitute allowable deductions from gross income when such payments are made in good faith and as additional compensation for the services actually rendered by the employees, provided such payments, when added to the stipulated salaries, do not exceed a reasonable compensation for the services rendered. * * * Donations made to employees and others, which do not have in them the element of compensation or which are in excess of reasonable compensation for services, are not deductible from gross income."

It would be incongruous to permit Lincoln to deduct the "bonus" as "addition-

al compensation for services actually rendered" in computing its "cost of goods sold" for income tax purposes, and yet permit Lincoln to prevail with its claim that such payments are based solely on profits related to "efficient operation of its business," but unrelated to actual production cost as a direct or indirect cost of labor for valuation of inventory.

The only case found which seems to have dealt squarely with the issue here presented is *Elgin National Watch Company,* 17 B.T.A. 339 (1929). In that case the Commissioner took the same position as to Elgin as is here taken in regard to Lincoln and the Board of Tax Appeals agreed with the Commissioner. Additional support for the Commissioner is found in Photo-Sonics, Inc. v. C.I.R., 357 F.2d 656 (9th Cir. 1966).

As previously stated, Lincoln has consistently taken the position that the "bonus" should not be included as a cost because there is no obligation requiring Lincoln to pay a "bonus" and the Court below in reaching its decision concluded that such was the fundamental question in this case. This position, of course, ignores the nature of the "bonus" payments in the hands of the employees of Lincoln where unquestionably such payments are treated by the employees as compensation for labor performed in the production of Lincoln's goods. While it must be conceded that Lincoln's methods of accounting find support in some generally accepted accounting principles, such support is not binding upon the Commissioner if the method does not "clearly reflect income." As stated by the Supreme Court in American Automobile Association v. United States, 367 U.S. 687 (1961), at page 693, 81 S.Ct. 1727, at page 1730, 6 L.Ed.2d 1109 (1961):

> "This is only to say that in performing the function of business accounting the method employed by the Association 'is in accord with generally accepted commercial accounting principles and practices.' It is not to hold that for income tax purposes it

so clearly reflects income as to be binding on the Treasury."

The right of the Commissioner to treat receipts and disbursements differently for tax purposes than for normal accounting purposes, where the Treasury reasonably concludes that the normal accounting practice does not clearly reflect income, was upheld in Schlude v. Commissioner of Internal Revenue, 372 U.S. 128, 83 S.Ct. 601, 9 L.Ed.2d 633 (1963). This Court is satisfied that failure to include the "bonus" as a cost of Lincoln's year-end inventory would ignore the requirement of the statute that the accounting method must "clearly reflect income."

Accepting the conclusion of the taxpayer and the United States Tax Court that the test should be whether there is an *obligation* to pay, it is our conclusion that there was such an obligation. A similar issue was presented to this Court in Beacon Journal Publishing Company v. N.L.R.B., 401 F.2d 366 (6th Cir. 1968). In *Beacon* the appellant had for 20 years paid a Christmas bonus equal to two weeks' salary at each employee's *then existing* salary scale. In 1965 the Company paid a bonus on the basis of the *1964* salary scale without the consent of the employees or the union representing the employees. In considering the complaint that Beacon had been guilty of an unfair labor practice, because of its failure to negotiate in regard to the change in the basis for payment of the bonus, this Court said at page 367 of 401 F.2d:

> "The Beacon Journal contends that it has always regarded the bonus as voluntary and purely discretionary with management and had repeatedly said so in paying it. There is nothing in this record to dispute this as a management view. But it appears to be settled labor relations law that a regularly paid bonus may come to be relied upon by employees as a part of total compensation. [citations]. Such a bonus is a mandatory subject for collective bargaining under the N.L.R.A. [citations]."

Perhaps wisely, the Tax Court chose not to enter into the complex field of accounting principles as has been done by this Court. We are satisfied after an examination of such principles that support can be found for the position of the taxpayer and the position of the IRS. But on balance the Court is of the opinion that the authorities supporting the position taken by the IRS are more consistent and sensible and require that the "bonus" paid by Lincoln be treated as a "cost of production" in computing the value of the year-end inventory. We are satisfied that the "bonus" payments must be regarded as compensation for labor performed and necessarily a direct or indirect cost of labor. This Court is further satisfied that after 30 years the "year-end incentive compensation" or "bonus" had ceased to be discretionary with the Board of Directors of Lincoln and had become a part of anticipated compensation for labor performed by the employees.

We conclude, as did the Tax Court, that regardless of whether payment of the bonus was obligatory "the entire bonus arrangement is tied to production," and therefore represented direct or indirect labor costs of producing Lincoln's inventories, allocable portions of which should have been included in valuing its closing inventories in the same manner as overtime and vacation pay are included.

For the reasons stated the judgment of the Tax Court is affirmed.

# APPENDIX

## SCHEDULE OF NET SALES, WAGES AND BONUS
### 1934 to 1965
#### (000's omitted)

| Year | Average No. of Employees | Net Sales | Gross Profit Before Bonus and Taxes | Regular Payroll | Cash Bonus | Total Competition [sic] |
|------|------|------|------|------|------|------|
| 1934 | 404 | $ 4,065 | $ 1,768 | $ 752 | $ 132 | $ 884 |
| 1935 | 485 | 5,262 | 2,130 | 930 | 226 | 1,156 |
| 1936 | 535 | 8,291 | 2,816 | 1,138 | 436 | 1,574 |
| 1937 | 666 | 10,709 | 3,658 | 1,512 | 673 | 2,185 |
| 1938 | 650 | 6,791 | 1,817 | 1,144 | 212 | 1,356 |
| 1939 | 637 | 9,258 | 2,956 | 1,403 | 496 | 1,899 |
| 1940 | 740 | 13,570 | 4,182 | 1,817 | 981 | 2,798 |
| 1941 | 979 | 24,024 | 7,687 | 2,721 | 2,071 | 4,792 |
| 1942 | 1222 | 33,515 | 11,969 | 3,787 | 2,962 | 6,749 |
| 1943 | 1245 | 32,988 | 10,615 | 3,822 | 3,186 | 7,008 |
| 1944 | 1115 | 28,190 | 8,031 | 3,525 | 2,969 | 6,494 |
| 1945 | 1110 | 24,306 | 6,763 | 3,407 | 3,057 | 6,464 |
| 1946 | 1167 | 23,717 | 6,904 | 3,242 | 2,891 | 6,133 |
| 1947 | 1157 | 31,297 | 9,291 | 3,816 | 3,768 | 7,584 |
| 1948 | 1099 | 31,162 | 8,730 | 4,101 | 3,825 | 7,926 |
| 1949 | 1026 | 25,662 | 6,433 | 3,357 | 3,007 | 6,364 |
| 1950 | 1005 | 31,895 | 8,599 | 3,717 | 3,679 | 7,396 |
| 1951 | 1016 | 35,798 | 10,346 | 4,442 | 4,120 | 8,562 |
| 1952 | 1170 | 43,062 | 11,329 | 5,310 | 5,134 | 10,444 |
| 1953 | 1243 | 43,119 | 10,634 | 5,120 | 5,105 | 10,225 |
| 1954 | 1153 | 39,538 | 9,774 | 4,823 | 4,461 | 9,284 |
| 1955 | 1181 | 50,851 | 13,050 | 5,701 | 5,407 | 11,108 |
| 1956 | 1320 | 63,256 | 17,801 | 7,040 | 7,424 | 14,464 |
| 1957 | 1395 | 64,861 | 16,304 | 7,577 | 6,602 | 14,179 |
| 1958 | 1365 | 52,101 | 12,479 | 6,830 | 5,147 | 11,977 |
| 1959 | 1344 | 62,029 | 16,277 | 7,578 | 6,490 | 14,068 |
| 1960 | 1333 | 57,410 | 15,360 | 7,685 | 6,485 | 14,170 |
| 1961 | 1317 | 56,701 | 13,601 | 7,704 | 6,387 | 14,091 |
| 1962 | 1307 | 61,346 | 15,328 | 8,280 | 7,375 | 15,655 |
| 1963 | 1354 | 66,362 | 17,458 | 9,137 | 8,471 | 17,608 |
| 1964 | 1475 | 79,498 | 22,308 | 10,587 | 12,496 | 23,083 |
| 1965 | 1641 | 89,289 | 23,628 | 11,652 | 14,089 | 25,741 |

[A4209]