JOSEPH GANN, INC., Petitioner, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent, Appellee.

No. 82–1559.

United States Court of Appeals, First Circuit.

Argued Dec. 8, 1982.
Decided March 1, 1983.

Steven A. Gabovitch, Lincoln, Mass., with whom William Gabovitch, Boston, Mass., was on brief, for petitioner, appellant.

Daniel F. Ross, Atty., Tax Div., Dept. of Justice, Washington, D.C., with whom Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Atty., Tax Div., Dept. of Justice, and Richard Farber, Atty., Tax Div., Dept. of Justice, Washington, D.C., were on brief, for respondent, appellee.

Before COFFIN, Chief Judge, BREYER, Circuit Judge, and SMITH,* Senior District Judge.

### PER CURIAM.

This appeal challenges a tax Court decision[1] holding that Treasury Regulations Section 1.1012–1(c)(1) (1954 Code) (26 C.F.R.) is a valid regulation and is applicable to this case. The regulation provides that when a taxpayer sells stock without identifying which of several lots, purchased at different times and prices, has been sold, it will be presumed that the stock sold is the stock first acquired.

The corporate taxpayer-appellant stands to lose its favorable Subchapter S status under Section 1372 of the Internal Revenue Code by reason of its "passive investment income" exceeding 20 per cent of its gross receipts. This result follows if, in the relevant tax years, its gains from stock sales are computed on the "first in, first out" (FIFO) basis set forth in the above described regulation. Appellant, however, would keep its favorable status allowing it as an entity to escape income tax liability if it were permissible for it to compute gains from stock sales by using as a basis the average cost of all shares acquired. Taxpayer contends that its use of average cost, paralleling its approach in its bookkeeping for its wholesale and retail jewelry business, is its usual "method of accounting" and is thus sanctioned by Section 446 of the Code,[2] there having been no indication that its method did not clearly reflect income. It claims that the regulation relied on by the Commissioner conflicts with Section 446 and is invalid.

■ Having read the very substantial briefs of the parties, heard oral arguments, and reviewed the comprehensive opinion of the Tax Court, we deem it sufficient for the purposes of this case to rest on the principle that " 'Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law.' " *United States v. Correll*, 389 U.S. 299, 305–06, 88 S.Ct. 445, 448–449, 19 L.Ed.2d 537 (1967)[3] (quoting *Helvering v. Winmill*, 305 U.S. 79, 83, 59 S.Ct. 45, 46, 83 L.Ed. 52 (1938)). It is this principle that appellant in its dogged, even learned argumentation either overlooks or underestimates.

■ The statute underlying the challenged regulation is 26 U.S.C. § 1012 which states in effect that the basis for determining gain or loss in the disposition of property "shall be the cost of such property". The regulation embodying FIFO dates from 1918, and the "cost as basis" statute from the same era. In short, for over six decades the Commission's method of determining cost for sales of stock where records do not permit identification of actual shares sold

---

* Of the District of Montana, sitting by designation.

1. 43 T.C.M. (CCH) 682.

2. Sec. 446 of the Internal Revenue Code of 1954 (26 U.S.C.) provides in relevant part: "(a) Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books ...; (b) ... if the method used does not clearly reflect income, the computation of taxable income shall be made under [a method determined by the Secretary]; (c) [Permissible methods include] (1) the cash receipts and disbursements method; (2) an accrual method; (3) any other method permitted by this chapter; or (4) any combination of the foregoing methods permitted under regulations ...."

3. We note the use of the word "deemed". Actual proof of congressional awareness and approval is not required.

has been prominently enshrined in the regulation, provoking no effort by the Congress to change this application of its general statutory mandate. It is equally significant that Section 446 has existed for virtually all of the life of the regulation, its closely similar progenitor having been enacted as Ch. 18 § 212(b), 40 Stat. 1064–65, on February 24, 1919.[4] The regulation, therefore, now has, and for at least a half century has had the force of law. *Skinner v. Eaton,* 45 F.2d 568, 570 (2d Cir.1930).

Appellant recognizes in its brief the presence of various "laws mandating that specific methods of accounting be used in certain instances" (Brief at p. 3), citing, *inter alia,* Sec. 447 (Method of Accounting for Corporations Engaged in Farming), Sec. 453 (Installment Method), Sec. 454 (Obligations Issued at a Discount), Sec. 455 (Prepaid Subscription Income), Sec. 471 (Inventories), and Sec. 167 (Depreciation). These, appellant contends, "are the only Congressionally authorized exceptions to the general rule of Sec. 446." (Brief at p. 7) In the first place, we are not sure that the regulation in the instant case, adopting FIFO as a way of identifying shares sold when historical fact is unknown, is a "method of accounting" in the sense in which the words are used in Section 446. It cannot be used when the actual cost of shares is known. It is, in the words of Justice Brandeis in *Helvering v. Rankin,* 295 U.S. 123, 130, 55 S.Ct. 732, 735, 79 L.Ed. 1343 (1935) (quoting with approbation the taxpayer) " 'a useful and reasonable rule for ascertaining what stock was sold in cases where there is no proof . . . .' "[5] In any event, even if the regulation implicates a "method of accounting" in the sense used in Section 446, the regulation survives fully as much as do the statutory sections noted by appellant, for it *is* law by virtue of its age and coexistence with both 26 U.S.C. §§ 446 and 1012.

We see a persuasive parallel in *Helvering v. Winmill,* 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52 (1938), in which Article 282, Treasury Regulation 77, which provided that "Commissions paid in purchasing securities are a part of the cost price of such securities", was held to have the effect of law by reason of the legitimizing effect of age and coexistence of unamended or reenacted statutes. It was contended that the statutory provision concerning uncompensated losses should govern. The court noted "[I]f the specific provisions of Article 282 are valid and have the present effect of law, respondent's contention that the commissions are uncompensated losses within the meaning of the general provisions of § 23(e)(1) of the 1932 Act is unavailing." *Id.* n. 9 at 84, 59 S.Ct. n. 9 at 47. In other words a specific regulation that had become law through age and unchanging relevant statutes was not swallowed up by a more general statute, but continued to be as viable as if it had been enacted by Congress.

We dismiss without further discussion appellant's estoppel argument that, in effect, once the Commissioner fails to challenge a taxpayer's treatment of an item in a return, he is forever barred from enforcing the law as he interprets it. *Lincoln Electric Co. v. C.I.R.,* 444 F.2d 491, 493 (6th Cir.1971).

The remaining points asserted merit no discussion.

*Affirmed.*

---

**4.** Were this not so, an argument might be made that § 446 should, as Congress' latest word on the subject, be read as a rejection of Section 1.1012–1(c)(1).

**5.** That the FIFO regulation is not coterminous with a "method of accounting" is further suggested by recognition that it also serves the purpose of ascertaining if the stock being sold has been held for a sufficient period, for instance, for capital gain or loss provisions to apply, Appellant's average cost method does not address the holding period problem, but would have the cost of even the shares too recently acquired to merit capital gains treatment affect (favorably to taxpayer during an inflationary period) the basis of the stock sold.