JOSEPH E. HALL, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 15095-86.        Filed May 15, 1989.

*W. Louis Beecher,* for the petitioner.
*Elizabeth G. Beck,* for the respondent.

DRENNEN, *Judge:* Respondent, in a statutory notice of deficiency dated March 11, 1986, determined a deficiency in petitioner's Federal income tax in the amount of $33,149.

The issues for consideration are: (1) Whether petitioner correctly computed gain and loss on 1982 sales of Kemper Technology Fund, Inc. (Technology) noncertificate stock; and (2) whether petitioner correctly computed gain and loss on 1982 sales of Kemper Summit Fund, Inc. (Summit) noncertificate stock.

### FINDINGS OF FACT

This case was submitted fully stipulated pursuant to Rule 122.[1] The stipulation of facts, together with the exhibits attached thereto, is incorporated by this reference.

Petitioner Joseph E. Hall had his legal residence at 316 Glencoe, Apt. D, Waterloo, Iowa, 50701, at the time the

---

[1] All Rule references are to the Tax Court Rules of Practice and Procedure. All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years at issue.

petition herein was filed. Petitioner timely filed his Federal income tax return for the taxable year 1982 with the Office of the Internal Revenue Service at St. Louis, Missouri.

Technology is an open-end diversified investment company, otherwise known as a mutual fund. Its primary objective is the growth of capital and income through the investment in securities of companies which will benefit from technological advances and improvements. Summit is also a mutual fund. Its primary objective is to maximize appreciation of investors' capital through investments in common stocks and securities convertible into or exchangeable for common stocks. Petitioner owned both certificate and noncertificate shares in Technology and Summit. Certificate shares are shares represented by stock certificates, whereas noncertificate shares are not represented by stock certificates.

The central issue in this case is whether petitioner should have used the last in/first out (LIFO) or the first in/first out (FIFO) method for computing gains and losses recognized on sales of noncertificate shares in Technology and Summit. Under the LIFO method, shares of stock transferred are charged against the last of such lots purchased or acquired. Under the FIFO method, shares of stock transferred are charged against the first lots of such stock purchased or acquired.

Petitioner initiated purchases and sales of Technology and Summit shares by telephonic communication with the shareholder servicing agent for the two mutual funds; DST Systems, (DST) (sometimes hereinafter referred to as agent-broker). DST personnel do not advise or recommend trading strategies. They simply execute the trades as specified by the client. According to petitioner's trial brief, the telephoning client is required to identify himself by name and code number in order to insure proper authorization. In initiating sales of noncertificate stock of these companies during the years here involved, petitioner did not designate when the shares to be sold were acquired nor the cost thereof; he simply told the agent-broker the number of shares he wanted to sell and the selling prices.

With respect to the sale of noncertificate shares, the agent-broker of petitioner confirmed such sale orders in

writing shortly after the transaction was complete. At the end of the calendar year, the agent-broker mailed petitioner a "confirmation of transactions" for that calendar year. Each such confirmation of transactions indicated the confirmation date, trade date, transaction, dollar amount of the transaction, share price, number of shares sold, and balance of shares owned by petitioner. The confirmation of transactions did not identify the noncertificate shares sold by their respective costs or acquisition dates.

On August 1, 1969, petitioner purchased 100,682 shares of Technology in certificate form. Subsequent to August 1, 1969, petitioner purchased additional shares in Technology, by both direct purchase and dividend reinvestment. As of December 31, 1976, petitioner owned 77,585 shares of Technology in certificate form; none in noncertificate form. Petitioner did not sell or otherwise exchange certificated shares in Technology from December 31, 1976, through December 31, 1980. The parties have stipulated that neither purchases nor sales of these certificate shares are in controversy in this proceeding.

Noncertificate shares of Technology were purchased by petitioner between 1980 and 1983. With respect to those purchases, the parties have stipulated trade dates, confirmation dates, dollar amounts, share totals, and share prices. They have also stipulated yearly totals of shares owned. For years beginning after 1979 those totals are:

Dec. 31, 1980:      Certificate shares—77,585
                         Noncertificate shares—13,624.513
Dec. 31, 1981:      Certificate shares—77,585
                         Noncertificate shares—19,332.587
Dec. 31, 1982:      Certificate shares—60,865
                         Noncertificate shares—9,084.013
Dec. 31, 1983:      Certificate shares—60,865
                         Noncertificate shares—6,185.907

The shares in Technology sold during 1982 which are at issue herein were all held in noncertificate form. Petitioner used the LIFO method of accounting in computing gains and losses from the 1982 sales of these shares. The resulting taxable gains and losses on petitioner's sales of these shares were reported on petitioner's 1982 Federal income tax return as follows:

| Date sold | Date acquired | Number of shares sold | Sales price | Cost | Short-term gain or loss | Long-term gain or loss |
|---|---|---|---|---|---|---|
| 01/26/82 | 11/30/81 | 2187.833 | $22,687.83 | $25,138.21 | $(2,450.38) | - - - |
| 01/26/82 | 11/30/81 | 1220.744 | 12,659.11 | 14,026.35 | (1,367.24) | - - - |
| 01/26/82 | 09/30/81 | 3438.096 | 35,653.06 | 37,887.82 | (2,234.76) | - - - |
| 09/10/82 | 09/30/81 | 5923.791 | 64,391.60 | 65,280.19 | (888.59) | - - - |
| 09/10/82 | 08/04/82 | 673.291 | 7,318.67 | 6,382.80 | 935.87 | - - - |
| 09/10/82 | 05/13/82 | 602.151 | 6,545.38 | 6,340.65 | 204.73 | - - - |
| 09/10/82 | 02/04/82 | 509.835 | 5,541.90 | 5,404.25 | 137.65 | - - - |
| 09/10/82 | 08/28/81 | 392.896 | 4,270.77 | 5,040.85 | - - - | $(770.08) |
| 09/10/82 | 05/29/81 | 385.681 | 4,192.35 | 5,017.71 | - - - | (825.36) |
| 09/10/82 | 02/27/81 | 419.033 | 4,554.88 | 5,472.57 | - - - | (917.69) |
| 09/10/82 | 11/02/79 | 292.954 | 3,184.45 | 2,671.74 | - - - | 512.71 |
| | | | | Total | (5,662.72) | (2,000.42) |

Respondent computed taxable gains and losses from sales of petitioner's noncertificate shares in Technology during 1982 based on the FIFO method of accounting. The resulting taxable gains and losses on petitioner's sales transactions, as determined by respondent, are as follows:

| Date sold | Date acquired | Number of shares sold | Sales price | Cost | Short-term gain or loss | Long-term gain or loss |
|---|---|---|---|---|---|---|
| 01/26/82 | 11/02/77 | 1182.698 | $12,264.58 | $7,758.50 | - - - | $4,506.08 |
| 01/26/82 | 02/05/79 | 377.331 | 3,912.92 | 38,150.71 | - - - | 762.21 |
| 01/26/82 | 05/15/79 | 475.631 | 4,932.29 | 3,957.25 | - - - | 975.04 |
| 01/26/82 | 11/02/79 | 1053.166 | 10,921.34 | 9,604.87 | - - - | 1,316.47 |
| 01/26/82 | 11/02/79 | 2535.687 | 26,295.08 | 23,125.47 | - - - | 3,169.61 |
| 01/26/82 | 02/27/81 | 419.033 | 4,345.37 | 5,472.57 | $(1,127.20) | - - - |
| 01/26/82 | 05/29/81 | 385.681 | 3,999.51 | 5,017.71 | (1,018.20) | - - - |
| 01/26/82 | 08/28/81 | 392.896 | 4,074.33 | 5,040.85 | (966.52) | - - - |
| 01/26/82 | 09/30/81 | 24.550 | 254.58 | 270.54 | (15.96) | - - - |
| 09/10/82 | 09/30/81 | 9199.632 | 100,000.00 | 101,379.94 | (1,379.94) | - - - |
| 12/02/82 | 09/30/81 | 137.705 | 1,757.12 | 1,517.50 | - - - | 239.62 |
| 12/02/82 | 11/30/81 | 862.295 | 11,002.88 | 9,907.76 | - - - | 1,095.12 |
| | | | | Total | (4,507.82) | 12,064.15 |

On January 27, 1975, petitioner purchased 4,473.026 noncertificate shares in Summit. On December 30, 1975, petitioner purchased 1,184 additional shares in certificate form of Summit. As with the Technology purchases, written confirmations of those transactions set forth trade dates, confirmation dates, dollar amounts, selling prices per share, and share totals. Yearly share ownership totals were as follows:

Dec. 31, 1980:        Certificate shares—1,184
                      Noncertificate shares—45,228.943
Dec. 31, 1981:        Certificate shares—1,184
                      Noncertificate shares—47,298.63
Dec. 31, 1982:        Certificate shares—1,184
                      Noncertificate shares—40,613.670

Petitioner used the LIFO method of accounting in reporting gains and losses on his 1982 sales of noncertificate shares in Summit. The resulting gains and losses, as reported on petitioner's 1982 Federal income tax return were as follows:

| Date sold | Date acquired | Number of shares sold | Sales price | Cost | Short-term gain or loss | Long-term gain or loss |
|---|---|---|---|---|---|---|
| 01/26/82 | 10/30/81 | 2586.207 | $42,000.00 | $42,077.59 | $(77.59) | - - - |
| 02/24/82 | 10/30/81 | 1341.583 | 21,250.67 | 21,827.56 | (576.89) | - - - |
| 02/24/82 | 12/03/80 | 2105.249 | 33,347.14 | 42,841.82 | - - - | $(9,494.68) |
| 02/24/82 | 12/05/79 | 2866.299 | 45,402.19 | 40,615.45 | - - - | 4,786.74 |
| 09/10/82 | 03/31/82 | 5750.431 | 100,000.00 | 89,361.69 | 10,638.31 | - - - |
| | | | | Total | 9,983.83 | (4,707.94) |

Respondent used the FIFO method of accounting in computing gains and losses on petitioner's 1982 sales of noncertificate shares in Summit. The resulting gains and losses, as determined by respondent were as follows:

| Date sold | Date acquired | Number of shares sold | Sales price | Cost | Short-term gain or loss | Long-term gain or loss |
|---|---|---|---|---|---|---|
| 01/26/82 | 01/27/75 | 2586.207 | $42,000.00 | $14,922.41 | - - - | $27,077.59 |
| 02/24/82 | 01/27/75 | 1763.590 | 27,935.27 | 10,175.92 | - - - | 17,759.35 |
| 02/24/82 | 01/27/75 | 23.229 | 367.95 | 134.03 | - - - | 233.92 |
| 02/24/82 | 01/30/75 | 4526.312 | 71,696.78 | 26,750.50 | - - - | 44,946.28 |
| 09/10/82 | 01/30/75 | 5750.431 | 100,000.00 | 33,985.05 | - - - | 66,014.95 |
| | | | | Total | - - - | 156,032.09 |

The parties have stipulated that petitioner did not elect to use the averaging methods, as provided in section 1.1012-1(e), Income Tax Regs., in computing reportable gains and losses from his sales of Technology and Summit noncertificate shares. The parties have also stipulated that petitioner has never filed a request, pursuant to section 1.446-1(e), Income Tax Regs., to change his method of computing gain or loss on the sale of noncertificate shares of the subject mutual funds.

The parties have stipulated transaction summaries of Summit and Technology purchases and sales. Those summa-

ries were prepared by petitioner's accountant, Robert Maas, CPA (Maas), on December 31, 1983. Maas' summaries set forth transaction dates, per-share costs, number of shares, sales prices, and gain or loss on disposal. Although those schedules do specify costs used to determine gain or loss recognized on a given disposition, no direct data is provided to delineate why those specific costs were appropriate. In other words, those costs were not related directly to specific shares sold.

The summaries provided by Maas simply reflect the LIFO method of accounting. On brief, petitioner states that "the cost basis assigned to the shares being sold was that of the immediately preceding 'purchase' or 'dividend reinvestment' entry. (The last chronological noncertificate share acquisition.) If the number of shares being sold was greater than the number of shares reported for the most recent acquisition, these remaining shares were assigned the cost basis of the second most recent purchase or dividend reinvestment."

Petitioner conceded an increase in his taxable income for the year 1982 in the amount of $7,449 as reported in the auditor's report.

Petitioner also concedes that he sold 1,000 shares of Technology noncertificate stock at $12.76 per share for a total dollar amount of $12,760, which should have been but was not reported on his 1982 return.

## OPINION

The central issue in this case is whether petitioner correctly computed gains and losses realized as a result of the disposition of noncertificate shares in Technology and Summit. Petitioner contends that he is free to use the LIFO method of accounting in allocating basis for purposes of computing those gains and losses. Respondent, on the other hand, argues that section 1.1012-1(c), Income Tax Regs.,[2]

---

[2](c) *Sale of stock* (1) *In general.* If shares of stock in a corporation are sold or transferred by a taxpayer who purchased or acquired lots of stock on different dates or at different prices, and the lot from which the stock was sold or transferred cannot be adequately identified, the stock sold or transferred shall be charged against the earliest of such lots purchased or acquired in order to determine the cost or other basis of such stock and in order to determine the holding period of such stock for purposes of subchapter P chapter 1 of the Code. If, on the other hand, the lot from which the stock is sold or transferred can be adequately identified, the rule stated in the preceding sentence is not applicable. As to what constitutes "adequate identification," see subparagraphs (2), (3), and (4) of this paragraph.

mandates that petitioner use the FIFO method in allocating basis.

Section 1001(a) provides that gain from the sale or other disposition of property is the amount realized less the adjusted basis of the property. Sections 1011 and 1012, insofar as here pertinent, provide that the basis of property sold is its cost to the taxpayer. When a taxpayer has acquired stock on different dates or at different costs and sells only a portion of that stock, a problem arises identifying the cost or basis of the stock sold. However, the taxpayer has the burden of proving his basis in the specific stock he sells. Respondent, recognizing this problem, has provided by regulations several safe harbor means of complying with the statute requirements.

Section 1.1012-1(c), Income Tax Regs., sets forth the rules governing the bases of stock sold by a taxpayer who has acquired blocks of stock on different dates or at different costs. Subdivision (1) of that section provides that the FIFO rule shall govern unless the lot from which the stock is sold can be adequately identified. In other words, absent ade-

---

(2) *Identification of stock.* An adequate identification is made if it is shown that certificates representing shares of stock from a lot which was purchased or acquired on a certain date or for a certain price were delivered to the taxpayer's transferee. Except as otherwise provided in subparagraph (3) or (4) of this paragraph, such stock certificates delivered to the transferee constitute the stock sold or transferred by the taxpayer. Thus, unless the requirements of subparagraph (3) or (4) of this paragraph are met, the stock sold or transferred is charged to the lot to which the certificates delivered to the transferee belong, whether or not the taxpayer intends, or instructs his broker or other agent, to sell or transfer stock from a lot purchased or acquired on a different date or for a different price.

(3) *Identification on confirmation document.* (i) Where the stock is left in the custody of a broker or other agent, an adequate identification is made if—

(a) At the time of the sale or transfer, the taxpayer specifies to such broker or other agent having custody of the stock the particular stock to be sold or transferred, and

(b) Within a reasonable time thereafter, confirmation of such specification is set forth in a written document from such broker or other agent.

Stock identified pursuant to this subdivision is the stock sold or transferred by the taxpayer, even though stock certificates from a different lot are delivered to the taxpayer's transferee.

(ii) Where a single stock certificate represents stock from different lots, where such certificate is held by the taxpayer rather than his broker or other agent, and where the taxpayer sells a part of the stock represented by such certificate through a broker or other agent, an adequate identification is made if—

(a) At the time of the delivery of the certificate to the broker or other agent, the taxpayer specifies to such broker or other agent the particular stock to be sold or transferred, and

(b) Within a reasonable time thereafter, confirmation of such specification is set forth in a written document from such broker or agent.

Where part of stock represented by a single certificate is sold or transferred directly by the taxpayer to the purchaser or transferee instead of through a broker or other agent, an adequate identification is made if the taxpayer maintains a written record of the particular stock which he intended to sell or transfer.

quate identification of the lot from which the stock was sold, the basis of the stock sold shall be the basis of the first stock acquired by the taxpayer. This subdivision of the regulation was promulgated in 1958, and has been recognized and applied by the courts for many years. See *Kluger Associates, Inc. v. Commissioner,* 617 F.2d 323 (1980), affg. 69 T.C. 925 (1978); *Beran v. Commissioner,* T.C. Memo. 1980-119, for discussions. The burden is on the taxpayer to adequately identify the stock which is sold. Rule 142(a); *Beran v. Commissioner, supra.* For the reasons stated below, we find that petitioner has failed to meet his burden.

The regulations also permit the use of two optional elective accounting methods for computing gains and losses realized on sales of shares of stock in regulated investment companies such as Technology and Summit. Secs. 1.1012-1(e)(3) and 1.1012-1(e)(4), Income Tax Regs. Those two elective provisions permit basis averaging. The first is denominated the "double-category" method, which is set forth in section 1.1012-1(e)(3), Income Tax Regs. Section 1.1012-1(e)(4), Income Tax Regs., sets forth an alternative "single-category" method of accounting. These alternative methods of accounting may produce results which are more favorable to taxpayers than those generated by the FIFO method because of lower realized gains. Petitioner did not elect to use either of these elective methods.

Under sections 1.1012-1(c)(3)(i) and (ii), Income Tax Regs., petitioner is required to "adequately identify" the stock sold to avoid using the FIFO method. In *Helvering v. Rankin,* 295 U.S. 123, 129 (1935), the Supreme Court said "The required identification is satisfied, if the margin trader has, through his broker, designated the securities to be sold as those purchased on a particular date and at a particular price. It is only when such a designation was not made at the time of the sale, or is not shown, that the 'First-in, first-out' rule is to be applied." While certificated stock was involved in the Rankin case, it is all the more important with noncertificate stock that the stock being sold be identified and designated at the time of sale.

In this case, there is no evidence that petitioner specifically designated to anyone, at the time of the sale, the shares of stock that he was selling. He usually told his

agent-broker over the telephone the number of shares he wanted to sell and the dollar amount to be realized from the sale. He did not tell his agent-broker the date the shares were purchased or the price he paid for them; and consequently the agent-broker did not include such information in his confirmation notices to petitioner. Petitioner failed to adequately identify the stock being sold, and failed to comply with the requirements of the regulation and the case law. The regulation requires that the FIFO method be used in determining petitioners gain or loss in the transaction here involved. We cannot determine from the record in this case when or how petitioner designated in his records just what shares were being sold in a particular transaction.

Petitioner argues that the adequate identification requirement does not apply to noncertificate shares of stock. Petitioner supports this argument by asserting that section 1.1012-1(c), Income Tax Regs., requires FIFO reporting only if certificate shares are involved. Specifically, petitioner notes that section 1.1012-1(c)(2), Income Tax Regs., references sales of certificates of stock in defining adequate identification. Petitioner also looks to section 1.1012-1(c)(3)(i), Income Tax Regs., as applying only where certificates remain in the custody of a broker. Petitioner argues that such references to certificate shares in the regulations preclude the applicability of the adequate identification requirement to sales of noncertificate shares.

We cannot agree with petitioner's reading of the applicable regulations. The adequate identification requirement is initially set forth in section 1.1012-1(c)(1), Income Tax Regs., which makes absolutely no reference to certificate or noncertificate shares of stock. Section 1.1012-1(c)(1), Income Tax Regs., only refers to stock generally. Section 1.1012-1(c)(3)(i), Income Tax Regs., initially refers to stock generally and notes that stock identified pursuant to this subdivision is the stock sold or transferred by the taxpayer, "even though stock certificates from a different lot are delivered to the taxpayer's transferee." Sec. 1.1012-1(c)(3)(i), Income Tax Regs. We do not agree that such a reference to certificate shares makes the adequate identification requirement inapplicable to noncertificate shares of stock. The reference to certificate shares in section 1.1012-1(c)(3)(i),

Income Tax Regs., does not preclude the applicability of the section. Moreover, petitioner has suggested no better or more equitable method for determining basis and holding period for noncertificate stock that cannot otherwise be identified. Petitioner has not suggested any provision in the law or regulations which authorize the use of the LIFO method of determining basis under these circumstances.

We finally note that adequate identification has long been found possible in situations where specific references to share certificates are not possible. For example, in *Helvering v. Rankin, supra,* an opinion which was rendered long before the promulgation of these regulations in 1958, the Court was faced with shares which were impossible to identify because of complex trading activity. In that case, the Court disagreed with the Commissioner that adequate identification was impossible:

> from the very nature of these marginal operations, the shares were incapable of identification by the broker or anyone else. The basis for this contention is the facts that in such transactions no certificate is issued in the name of the customer, or earmarked for or otherwise allocated to him; that all certificates are in the name of the broker or street names; and that all certificates for stock of the same kind are commingled and held by the broker for the common benefit of all dealing in that particular stock. The fallacy of this argument lies in the assumption that shares of stock can be identified only through stock certificates. It is true that certificates provide the ordinary means of identification. But it is not true that they are the only possible means * * * . Particularly is this so when, as here, the thing to be established is the allocation of lots sold to lots purchased at different dates and different prices. The required identification is satisfied if the margin trader has, through his broker, designated the securities to be sold as those purchased on a particular date and at a particular price. It is only when such a designation was not made at the time of the sale, or is not shown, that the "First-in, first-out" rule is to be applied. [*Helvering v. Rankin, supra,* at 128-129.]

*Rankin* is typical of the long-held judicial approach to adequate identification, i.e., that adequate identification is feasible in a wide variety of circumstances. *Rankin* also indicates that adequate identification can be accomplished where the trader, through his broker, designates the securities to be sold as those purchased on a particular date at a particular price. Accord *Kluger Associates, Inc. v. Commissioner, supra; Beran v. Commissioner, supra.*

Given our holding that adequate identification is required in this case, we must apply the applicable regulatory provision to determine whether adequate identification was in fact accomplished. Even though the shares of Technology and Summit involved in this case were not represented by certificates, the applicable regulatory provision is still sections 1.1012-1(c)(2) and 1.1012-1(c)(3), Income Tax Regs., which require adequate identification of the shares sold. Pursuant to the two-prong test set forth in that section 1.1012-1(c)(3)(b), Income Tax Regs., adequate identification is accomplished if the taxpayer specifies to the broker or transfer agent the particular stock to be transferred and written confirmation of such specification is forwarded to the taxpayer within a reasonable time. Petitioner did not specify the particular shares or blocks of stock to be transferred. In addition, the written confirmation supplied by the broker did not refer to such a specification. None of the information in the confirmation of transactions indicates how the shares transferred were selected. Therefore, petitioner has not satisfied either prong of section 1.1012-1(c)(3)(i), Income Tax Regs. Nor has he carried his burden of proving a basis in whatever asset he sold if the regulation is not applicable.

The parties stipulated that sale transactions with respect to Technology and Summit were initiated by petitioner by a telephone call to DST. The agent-broker of petitioner then confirmed such sale orders in writing shortly after the trade transaction was complete. The agent-broker subsequently mailed petitioner an annual confirmation of transactions. Each such confirmation indicated the confirmation date, trade date, transaction, dollar amount of transaction, share price, number of shares sold, and the balance of shares owned by petitioner. The confirmations did not specifically identify the noncertificate shares sold by their respective acquisition date or cost, or by any other reasonable means. Finally, the parties also stipulated that no specific shares were designated by the agent. Only the dollar amount of proceeds required or the number of shares sold were specified. Thus, all of petitioner's subject noncertificate share sales were made without regard to acquisition date, purchase price, or any other share specification mechanism.

Petitioner argues alternatively that he specified the shares to be sold and thereby satisfied the adequate identification requirement. We see nothing in the stipulation of facts or the accompanying exhibits to support this assertion. We have not been presented with any evidence which proves that petitioner specified precisely which shares DST was to sell. Nor is there any evidence that petitioner ever told his agent-broker or anyone else that he was using a LIFO method for designating which shares of his stock he was selling. Compare *Davidson v. Commissioner*, 305 U.S. 44 (1938); *Curtis v. Helvering*, 101 F.2d 40 (2d Cir. 1939). Moreover, petitioner did not designate the securities to be sold as those purchased on a particular date and a particular cost which *Helvering v. Rankin, supra* suggests is a suitable method of satisfying the adequate identification requirement. Petitioner has thus not satisfied the applicable regulation.

Petitioner has the burden of proving how much gain or loss he realized on the sale of stock owned by him. This requires identification of the stock sold. Absent any directions in the law as to how this may be done, respondent has included in his regulations instructions on how this is to be accomplished. This he has a right to do, keeping in mind that the regulations must be reasonable and fair. In *Joseph Gann, Inc. v. Commissioner*, 701 F.2d 3 (1st Cir. 1983), affg. per curiam T.C. Memo. 1982-104, cert. denied 464 U.S. 821 (1983), the Court of Appeals for the First Circuit reviewed the history and interpretation of section 1.1012-1(c)(1), Income Tax Regs. It stated that Treasury Regulations and interpretations long continued without substantial changes, applied to unamended or substantially reenacted statutes, are deemed to have congressional approval and have the effect of law. The Court affirmed the findings of this Court that section 1.1012-1(c)(1) Income Tax Regs., is a valid regulation and has the effect of law. The regulation involved in this case appears to be eminently fair and reasonable. It does not prevent the taxpayer from designating the specific share of stock he is selling if he does it at the time of the sale. The seller-taxpayer should have access to the information required to identify the shares being sold. If he does not have access to the information or does not present it,

the regulation simply provides a method for determining the necessary facts. The FIFO method does not necessarily work to the disadvantage, taxwise, of the seller. If he keeps adequate records and uses them he should normally be able to select which method he chooses to support his position. But we see no valid reason, and petitioner has advanced none, to permit a stock trader to wait until the end of a year to allot specific sales to his general inventory of stocks in such a manner as to be most beneficial to him taxwise. We find section 1.1012-1(c), Income Tax Regs., to be valid and controlling in this case, and that respondent has correctly applied it. That regulation provides a means by which petitioner's basis in the stock sold can be determined; without the regulation petitioner has failed to carry his burden of proving his basis, and hence the amount of his gain or loss, in the stocks he sold in 1982.

We recognize that the hurly-burly activity on the national stock exchange in this day and age may make the stocktraders' accounting rather difficult but that is the taxpayer's risk.

*Decision will be entered under Rule 155.*